IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GLENDA SHORTER THOMAS<br><br>Plaintiff,<br><br>v.<br><br>CITY OF CHICAGO,<br><br>Defendant. | Case No. 16-cv-08067<br><br>Honorable Judge Edmund Chang |

### AMENDED COMPLAINT

NOW COMES Plaintiff, GLENDA SHORTER THOMAS, by and through her attorneys LAD LAW GROUP, P.C., and for her Amended Complaint against the CITY OF CHICAGO, states as follows:

### PARTIES AND JURISDICTION

1. Plaintiff GLENDA THOMAS is a citizen of the United States of America, and a citizen and resident of Chicago, County of Cook, Illinois.

2. Defendant CITY OF CHICAGO is a body corporate and politic, with offices located in, and doing business in the City of Chicago, County of Cook, Illinois.

3. At all relevant times, Plaintiff was an "employee" of Defendant as that term is defined in 42 U.S.C. § 2000(e)(f).

4. At all relevant times, Defendant was an "employer" of Plaintiff as defined in 42 U.S.C. § 2000(e)(b).

5. This is an action for damages for sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, et seq., and for Retaliation.

1

6. This Court has jurisdiction to hear this Complaint pursuant to 28 U.S.C. §1331, and §1343.

## FACTS

7. Plaintiff is female.

8. Plaintiff began working for Defendant on or about September 16, 2013, as a Station Laborer at Defendant's Department of Water's South Plant.

9. Plaintiff underwent training at the start of her position as Station Laborer, and successfully completed all training requirements.

10. She met or exceeded Defendant's legitimate expectations. She was not written up or counseled regarding her performance.

11. As a Station Laborer, Plaintiff's main job duties included, but were not limited to, working in the "basins". Basins were located approximately 64-65 feet underground, contained sporadic holes in them, and were dimly lit.

12. The basins were considered a dangerous area to work, as an employee could fall down the holes, into a pit and injure themselves, and/or could get sucked in by a water pump.

13. Overtime pay was consistently available to Station Laborers, and Plaintiff worked approximately 25-30 hours of overtime per pay period.

14. Approximately two months after she began working as a Station Laborer, Plaintiff's supervisor at the time, Anton Glenn, began subjecting Plaintiff, along with another female co-worker, Pamela Littlejohn, to sexual harassment, and a hostile work environment.

15. In approximately November 2014, Glenn verbally attacked Plaintiff and Littlejohn, and berated them for allegedly being unable to handle a hose during their shift.

16. Glenn approached Plaintiff and Littlejohn, and complained that they were not holding the hose properly, and said, "hold it like you hold a dick."

17. At or around the same time, on another occasion, Glenn told both Plaintiff and Littlejohn that he did not want to work with them because they were women, and women could not do the job. Glenn frequently repeated this statement to Plaintiff and Littlejohn throughout their employment.

18. Glenn also frequently said to Plaintiff and Littlejohn, that they didn't want to work, and only wanted to sit on their "lazy ass" all day.

19. In November 2014, Plaintiff told Glenn that she was filing a claim of sexual harassment against him.

20. To circumvent Plaintiff's complaint, Glenn went to his supervisor, Chief Gerzon, to make a complaint about Plaintiff.

21. In November 2014, Gerzon called a meeting with Plaintiff. During the November 2014 meeting, Plaintiff complained to Gerzon regarding Glenn's sex based harassment of her and Littlejohn.

22. Plaintiff also told Gerzon that she was afraid of Glenn, and that he frequently yelled at her, and cursed her, referring to her as "mother fucker" and "your mother fucking ass", and that he (Glenn) did not treat male employees in the same manner.

23. Gerzon replied that he would tell Glenn to "stop."

24. Later during the meeting, Gerzon summoned Glenn into the meeting, over Plaintiff's objection.

25. When Glenn arrived in the meeting, he did not deny Plaintiff's allegations.

26. Gerzog responded by telling Glenn that he "could not do that" to Plaintiff.

27. Glenn then stated, "while she's here, I'm gonna give her shitty jobs."

28. Following the meeting, Plaintiff was to ride back to her assignment with Glenn. Glenn however, refused to allow Plaintiff to ride with him, and told her she would have to walk. Plaintiff's assignment was over a half a mile away. It was between 30 to 40 degrees outside, and Plaintiff was not wearing a coat.

29. In approximately December 2014, Glenn called Plaintiff on her personal cell phone and urged her to drop her complaint against him. Plaintiff refused his request.

30. In approximately January/February 2015, Glenn approached Plaintiff and told her that he use to host orgy parties, and that if he were still hosting, Plaintiff would be his "side-hoe", running the orgy parties with him.

31. He then stated "with that lipstick and big breasts, I would have made a lot of money off of you."

32. On at least two occasions thereafter, Glenn mentioned orgy parties to Plaintiff, and told her he wished she would have come.

33. In May 2015, Glenn told Plaintiff that another male employee liked her, and that if she liked him, she should give him a blow job, to get whatever she wanted from him.

34. Also in approximately May 2015, while Plaintiff was eating peanuts in the lunchroom, Glenn approached her and said, "I see you like nuts in your mouth."

35. At or around that same time, Plaintiff was eating a banana, and Glenn starred at Plaintiff uncomfortably, and would not look away. It made Plaintiff so uncomfortable, that she could not finish eating her lunch that, and no longer wanted to eat at the lunch table with other coworkers.

36. In approximately June 2015, when discussing overtime availability with Plaintiff, Glenn stated, "you don't want to work overtime because your ass is a money maker", and suggesting that Plaintiff "sell herself" to make extra money.

37. In July 2015, on information and belief, Glenn changed Plaintiff's work schedule so that she could work alone with him in the basin.

38. On or about July 8, 2015, Plaintiff submitted an Incident Report to Defendant regarding Glenn, and also made a claim of sex discrimination and harassment to Defendant's EEO department.

39. Defendant transferred Plaintiff to a different supervisor, Steve Moore, and changed her job to a Custodian.

40. As a custodian under Moore, Plaintiff was not allowed to work any overtime.

41. However, other employees, who had not engaged in protected activity of opposing unlawful discrimination, were allowed to work overtime.

42. In addition, Moore spoke to Plaintiff in an aggressive, demeaning tone, not used with other employees.

43. Approximately one week after her transfer, Glenn made threats to Plaintiff stating, "you're not going to get away with this". In addition, he told other

5

employees not to speak to Plaintiff, because she could not be trusted, and she had "knives in [his] back."

44. On two occasions since then, Plaintiff has seen Glenn outside of work while driving her vehicle. On each occasion, he has blown his horn at Plaintiff, and starred at her in an intimidating manner, causing Plaintiff fear and anxiety.

45. Plaintiff reported each of these instances in Paragraphs 40-44 above, to Defendant's EEO department.

46. Defendant took no action, and Plaintiff continued suffer harassment, retaliation, and a hostile work environment.

47. Because of Defendant's actions, Plaintiff suffered severe stress and anxiety, causing her to be hospitalized, and to have to take medication to just to be able to work.

48. Defendant's action/inactions caused Plaintiff lost wages, and emotional distress damages.

49. On August 31, 2015, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging race discrimination, gender discrimination, and retaliation. (See Exhibit A, attached hereto).

50. On July 20, 2016, the EEOC issued Plaintiff a Right To Sue Letter. (See Exhibit B, attached hereto).

51. Plaintiff timely filed her Complaint on August 12, 2016. [dkt. 1]

### COUNT I
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### GENDER DISCRIMINATION

52. Plaintiff repeats and realleges Paragraphs 1-51, as though fully set forth herein, as Paragraphs 1-51 of Count I of this Complaint.

53. Plaintiff is female.

54. Plaintiff performed her job duties satisfactorily. Prior to Defendant's discriminatory conduct, Plaintiff was never written up or disciplined regarding her performance.

55. Plaintiff experienced adverse employment actions, as set forth herein this complaint, including disparate treatment compared to male employees, and sexual harassment.

56. Similarly-situated, male employees were treated more favorably than Plaintiff, as they were not subject to the same adverse employment actions as Plaintiff has set forth herein this complaint.

57. As a result of Defendant's discriminatory conduct, Plaintiff has suffered pecuniary loss, and emotional damages, as set forth herein.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court find that Defendant engaged in discriminatory conduct against Plaintiff, and enter a judgment in favor of Plaintiff, making the following findings and granting the following relief:

    A.    That this Honorable Court find that Defendant discriminated against Plaintiff on the basis of her gender;

    B.    That this Honorable Court award Plaintiff money reasonably calculated to compensate her lost wages, and for all monetary damages sustained as a result of the discrimination by Defendant;

    C.    That this Honorable Court award pre-judgment interest and costs;

  D. That this Honorable Court award reasonable attorney's fees and costs pursuant to 42 U.S.C. §1988; and

  E. That this Honorable Court award any further relief as it may deem just and equitable.

## COUNT II
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## RETALIATION

58. Plaintiff repeats and realleges Paragraphs 1-57, as though fully set forth herein, as Paragraphs 1-57 of Count II of this Complaint.

59. Plaintiff engaged in the protected activity of opposing unlawful treatment by complaining of gender discrimination and sexual harassment, to Glenn, to Gerzon, and to Defendant's EEO Department.

60. Subsequently, Plaintiff suffered adverse employment actions, including termination.

61. A causal connection existed between Plaintiff's complaints, and the retaliatory conduct she experienced thereafter, as the sexual harassment and disparate treatment escalated after Plaintiff's complaints.

62. As a result of Defendant's retaliatory conduct, Plaintiff has suffered pecuniary loss, and emotional damages, as set forth herein.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court find that Defendant engaged in retaliatory conduct against Plaintiff, and enter a judgment in favor of Plaintiff, making the following findings and granting the following relief:

  A. That this Honorable Court find that Defendant retaliated against Plaintiff for complaining of discriminatory treatment;

8

B.     That this Honorable Court award Plaintiff money reasonably calculated to compensate his lost wages, and for all monetary damages sustained as a result of the discrimination by Defendant;

C.     That this Honorable Court award pre-judgment interest and costs;

D.     That this Honorable Court award reasonable attorney's fees and costs pursuant to 42 U.S.C. §1988; and

E.     That this Honorable Court award any further relief as it may deem just and equitable.

Respectfully submitted,

By: /s/ Jemelle D. Cunningham
Plaintiff's Attorney

Jemelle D. Cunningham
LAD LAW GROUP, P.C.
203 North LaSalle Street, Suite 2100
Chicago, Illinois 60601
(312) 252-3085

9